IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES BRYANT HUGHES, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-CV-952-WKW |
| | ) | [WO] |
| WARDEN REOSHA BUTLER, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

Charles Bryant Hughes, Jr., an Alabama state-convicted prisoner, filed this

Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 on December 4, 2025.[1]

(Doc. # 1.[2])  In this § 2254 petition, as amended (Doc. # 8), Petitioner challenges the

constitutionality of his convictions, after a trial by jury, and the 50-year sentence

imposed for first-degree rape in violation of Alabama Code § 13A-6-61 and second-

degree burglary in violation of Alabama Code § 13A-7-6 in the Circuit Court of

Elmore County, Alabama.   The sentence consists of a term of 35 years'

---

[1] Petitioner is represented by counsel; hence, the prison mailbox rule is inapplicable.  *See Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.").

[2] References to "Doc(s)." are to the document numbers of the pleadings and other materials in the court's electronic record, as compiled and designated on the docket sheet by the Clerk of Court. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system.

imprisonment on the rape conviction and 15 years' imprisonment on the burglary conviction, to be served consecutively. (*See* Doc. # 16 at 5.) In both direct and postconviction proceedings, the state courts denied Petitioner relief. (Docs. # 18-12, 18-14, 18-23, 18-24, 18-26.)

In the current § 2254 petition, Petitioner acknowledges that he did not file this (his first) petition within the one-year limitation period outlined in § 2244(d)(1)(A). (Doc. # 8 at 13.) However, he alleges that § 2244(d) does not bar this petition "on grounds of actual innocence because the charged sexual conducts were consensual."[3] (Doc. # 8 at 13.) Respondent answered arguing, among other things, that the petition is untimely under 28 U.S.C. § 2244(d)(1)(A). (Doc. # 16.) After two court directives, Petitioner filed a reply raising equitable tolling as an exception to the time-bar and reasserting the actual-innocence gateway.[4] (Docs. # 17, 19, 20.)

For the reasons set out below, Petitioner's claims are time-barred under § 2244(d)(1)(A), and Petitioner has not presented facts justifying equitable tolling

---

[3] The form Petitioner used to file his § 2254 petition contains a section that directs a petitioner whose judgment of conviction became final more than one year earlier to "explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar [his] petition." (Doc. # 8 at 13.)

[4] The reply brief has been considered, even though it was filed two days after the court-ordered deadline without a motion requesting permission for the untimely filing.

or demonstrating a gateway claim of actual innocence so as to excuse the time bar. Therefore, the petition must be dismissed with prejudice.[5]

## II.  SUBJECT MATTER JURISDICTION AND VENUE

Under 28 U.S.C. § 2254(a), federal district courts have the authority to consider an application for a writ of habeas corpus on behalf of an individual in state custody pursuant to a state-court judgment but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." This provision limits authority, rather than conferring it, with habeas jurisdiction established by 28 U.S.C. § 2241.  *See Thomas v. Crosby*, 371 F.3d 782, 787 (11th Cir. 2004).  Under § 2241, federal district courts have the power to grant writs of habeas corpus "within their respective jurisdictions," § 2241(a), when a state-convicted prisoner "is in custody in violation of the Constitution, " § 2241(c)(3). The "in-custody" requirement mandates that the habeas petitioner must "be 'in custody' under the conviction or sentence under attack at the time his petition is filed."  *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam).  Furthermore, § 2241(d), referred to as a "venue provision," "gives the petitioner 'the option of seeking habeas corpus either in the district where he is confined or the district where

---

[5] An evidentiary hearing under 28 U.S.C. § 2254(e)(2) and Rule 8 of the *Rules Governing Section 2254 Cases in the United States District Courts* is not necessary to adequately dispose of the petition.

the sentencing court is located.'" *Dobard v. Johnson*, 749 F.2d 1503, 1509–10 (11th Cir. 1985) (Clark, J., dissenting) (citation omitted).

Petitioner was in custody under a state-court judgment when he filed this petition. Additionally, at the time of filing, Petitioner was incarcerated for his state offenses in a state prison located in the Middle District of Alabama and was convicted and sentenced by a state court in this district. Accordingly, this court has subject matter jurisdiction to consider the petition, and venue is proper.

## III. DISCUSSION

### A.    <u>The AEDPA's Statute of Limitations</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), effective April 24, 1996, provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The one-year period begins to run when the state-court judgment is considered final, as defined by the AEDPA. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The AEDPA specifies two alternative dates on which a state-court judgment becomes final: (1) at the "conclusion of direct review" or (2) upon the "expiration of the time for seeking such review." § 2244(d)(1)(A).[6]

---

[6] The petition contains no facts that would trigger the application of § 2244(d)(1)(B)–(D).

In the answer to the amended petition, Respondent outlines the procedural timeline, concluding that after the state court judgment became final and accounting for periods subject to statutory tolling, *see* § 2244(d)(2), the one-year limitation period under § 2244(d)(1) expired in January 2024.  (Doc. # 16 at 32–34.)  Yet, Petitioner waited until December 2025, more than one year and ten months later, to file this § 2254 petition.  (Doc. # 1; Doc. # 16 at 34.)

In his reply, Petitioner does not dispute Respondent's timeline or the petition's untimeliness under § 2244(d).  Instead, he contends that he has made a "credible showing of actual innocence, coupled with a constitutional violation that prevented the prosecution of that claim."  (Doc. # 20 at 2.)  The constitutional violation to which he refers, as outlined in his amended petition, is that "he wanted to testify that the sexual acts were consensual," not rape, but that his trial "counsel advised against him testifying at trial."  (Doc. # 8 at 5.)  Petitioner takes those allegations a step further in his reply brief, stating that trial counsel "actually prevented him from testifying despite [his] clearly expressing that he wanted to take the stand."  (Doc. # 20 at 4.)  In essence, Petitioner raises a gateway claim of actual innocence, arguing that he would have testified at trial that the sexual intercourse was consensual; however, the jury was deprived of this testimony due to the ineffectiveness of his trial counsel.

5

Petitioner also contends that the limitation period is subject to equitable tolling because "[s]erious attorney misconduct that deprives a defendant of a fundamental constitutional right may qualify as such an extraordinary circumstance." (Doc. # 20 at 3 (citing *Holland v. Florida*, 560 U.S. 631, 651–52 (2010).) He argues that the alleged violation of his Sixth Amendment right to testify at trial, "which is inextricably intertwined with his inability to present evidence of actual innocence at trial," constitutes an extraordinary circumstance warranting equitable tolling. (Doc. # 20 at 4.) The discussion turns to Petitioner's assertion of equitable tolling and his gateway claim of actual innocence.

**B.** **Equitable Tolling and a Gateway Claim of Actual Innocence**

An otherwise untimely petition under 28 U.S.C. § 2254 may be considered if the petitioner demonstrates either entitlement to equitable tolling or a gateway claim of actual innocence. As explained below, Petitioner has not identified facts establishing that he is entitled to equitable tolling or that he has a valid gateway claim of actual innocence.

**1.** *Equitable Tolling*

Equitable tolling of 28 U.S.C. § 2244(d)(1)(A)'s one-year period of limitation is warranted where a petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and

internal quotation marks omitted). "The diligence required for equitable tolling purposes is 'reasonable diligence.'" *Id.* at 653 (citation omitted). The inquiry into "extraordinary circumstances" focuses "'on the circumstances surrounding the late filing of the habeas petition' and not on the circumstances of the underlying conviction, and whether the conduct of others prevented the petitioner from timely filing." *Arthur v. Allen*, 452 F.3d 1234, 1253 (11th Cir.) (citations omitted), *op. modified on reh'g*, 459 F.3d 1310 (11th Cir. 2006). Equitable tolling is "an extraordinary remedy" and, thus, is "limited to rare and exceptional circumstances and typically applied sparingly." *Thomas v. Att'y Gen.*, 992 F.3d 1162, 1179 (11th Cir. 2021) (citation omitted). "The petitioner bears the burden of showing that equitable tolling is warranted." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam).

Petitioner has not demonstrated a diligent pursuit of his rights within the one-year limitation period for filing a timely § 2254 petition, nor has he shown that extraordinary circumstances prevented its timely filing. Although Petitioner relies on *Holland v. Florida*, 560 U.S. 631, 649 (2010), that decision actually illustrates why equitable tolling does not apply to his situation. (Doc. # 20 at 3.)

In *Holland*, regarding the petitioner's diligence, the United States Supreme Court found that Holland had demonstrated reasonable diligence to ensure his federal habeas petition was timely filed. He wrote numerous letters to his attorney,

7

seeking critical information and providing directives. *See Holland*, 560 U.S. at 653. He also contacted the state courts, their clerks, and the Florida State Bar Association to have his court-appointed attorney removed from his case. Furthermore, on the same day he discovered that his AEDPA clock had expired due to his attorney's shortcomings, he prepared and filed his own habeas petition *pro se*. *See id*.

As for extraordinary circumstances, the Court indicated that Holland's case might present such circumstances due to his attorney's conduct. *See id.* at 652. The attorney did not file Holland's federal petition on time, despite Holland's numerous letters stressing the importance of doing so. The attorney also neglected to conduct the necessary research to determine the correct filing date, did not promptly inform Holland of the Florida Supreme Court's decision in his case, and failed to communicate with Holland for years. *See id.* These failures were seen as potentially violating fundamental canons of professional responsibility. *See id.* at 652–53. However, remanding the case for further proceedings, the Court left it to the lower courts to decide if the circumstances were extraordinary so as to warrant equitable tolling. *Id.* at 653–54.

Petitioner's showing does not meet the two criteria for equitable tolling. First, equitable tolling requires Petitioner to demonstrate that he has diligently pursued his rights. Unlike in *Holland*, he has not shown any efforts he took to pursue federal habeas review under 28 U.S.C. § 2254 within the one-year limitation period. *See*

8

560 U.S. at 653.  He belatedly filed this § 2254 petition more than a year and ten months after the one-year deadline had passed, without offering any reason to justify the delay or explaining why the delay occurred.  He also has not demonstrated that circumstances beyond his control prevented him from filing a § 2254 petition on time.

Second, the alleged extraordinary circumstance—that his trial attorney was ineffective for preventing him from testifying that the charged rape was instead consensual—relates to the merits of the federal habeas claim rather than the petition's untimely filing.  As demonstrated in *Holland*, equitable tolling focuses on the circumstances surrounding the late filing, not the underlying merits of the petition.  Petitioner's argument misses the mark of what is required to demonstrate extraordinary circumstances.  *See Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1314–15 (11th Cir. 2001) (holding that "the district court erred . . . in focusing upon the merits of the case to justify equitable tolling").

Finally, Petitioner incorrectly invokes his alleged actual innocence (resulting from an alleged Sixth Amendment violation of his right to testify at trial) as an extraordinary circumstance for equitable tolling.  Equitable tolling does not provide the proper framework for a claim that actual innocence overrides a time bar.  In *McQuiggin v. Perkins*, the United States Supreme Court specifically distinguished these two frameworks, indicating that actual innocence is a separate and distinct path

to overcome the AEDPA's statute of limitations, not a basis for extending it:  A petitioner who invokes "a plea of actual innocence" to bypass the AEDPA's one-year statute of limitations "seeks an equitable *exception* to § 2244(d)(1), not an extension of the time statutorily prescribed."  569 U.S. 383, 392 (2013).

Because Petitioner has neither shown extraordinary circumstances nor demonstrated a diligent pursuit of rights to file his petition on time, equitable tolling is not justified.

### 2.    *Gateway Claim of Actual Innocence*

Even where there is no basis for equitable tolling, a petitioner can overcome § 2244(d)(1)(A)'s one-year period of limitation based on "a convincing showing of actual innocence."  *Id.* at 386, 392.  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar," or, as in this case, the "expiration of the [§ 2244(d)(1)(A)] statute of limitations."  *Id.* at 386.  "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief."  *Id.* at 392.  In other words, this gateway claim "is 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"  *Trease v. Sec'y, Fla. Dep't of Corr.*,

2026 WL 508474, at *8 (11th Cir. Feb. 24, 2026) (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)).

"[T]enable actual-innocence gateway pleas are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (alteration adopted) (quoting *Schlup*, 513 U.S. at 329). To persuade the district court, "the petitioner must show that it is *more likely than not* that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327 (emphasis added). "Or, to remove the double negative, he must demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'" *Wainwright v. Sec'y, Fla. Dep't of Corr.*, 2023 WL 4582786, at *5 (11th Cir. July 18, 2023) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316); *see id.* ("stress[ing] once again that the *Schlup* standard is demanding"). To meet this standard, the evidence of actual innocence must be both new and reliable. "To be credible," a gateway claim of actual innocence "requires

11

petitioner to support his allegations of constitutional error with new *reliable* evidence." *Schlup*, 513 U.S. at 324 (emphasis added).

### a.   New Evidence

The first issue is whether Petitioner's evidence qualifies as new.  The evidence in question is Petitioner's own testimony, which was not presented at trial because he claims his attorney prevented him from taking the stand in his own defense. (Doc. # 20 at 4.)  The Eleventh Circuit, in an unpublished opinion, explained:

> In establishing an actual innocence exception to procedural default, the Supreme Court explained that "new evidence" of actual innocence includes "evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 328 (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)).  The Court also observed that "[t]o be credible" an innocence claim must be based on "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.  When the Court extended this "actual innocence" exception to the statute of limitations, it likewise referenced "new evidence." *McQuiggin*, 569 U.S. at 386.

*Stimpson v. Warden*, 2025 WL 484049, at *3 (11th Cir. Feb. 13, 2025).  As the *Stimpson* panel recognized, other "circuits have split on the kind of 'new evidence' that a petitioner must introduce to establish actual innocence." *Id.*  The first "approach requires a petitioner to submit evidence that 'was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Id.* (quoting *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005)).  The second "approach removes that diligence requirement and considers evidence that was not

presented at trial 'new,' regardless of whether that evidence could have been discovered earlier." *Id.* (quoting *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003)). "To date, the Eleventh Circuit has not taken a position on the issue." *Id.*

In *Stimpson*, the choice between the two approaches was significant because Stimpson's attorney was aware of, but chose not to present, two pieces of evidence during the trial. *Id.* at \*4. The *Stimpson* court did not decide which one to apply. Instead, the court assumed, without deciding, that Stimpson was correct that the court could consider all evidence, both available and unavailable at trial. However, the court ultimately found that his evidence still did not establish actual innocence to overcome the limitations bar. *Id.*

### i.    Second Approach

Under the second approach, it is clear that the evidence (*i.e.*, Petitioner's testimony) was not presented at his trial, as Petitioner did not testify.

### ii.    First Approach

Under the first approach, taking Petitioner's claim at face value, the evidence was unavailable because, despite knowing Petitioner wanted to testify that he was not guilty of rape (because he says the sex was consensual on the day in question), his trial attorney prevented him from taking the stand. Or, in other words, according to Petitioner, his testimony was wrongly excluded through the ineffectiveness of his trial counsel.

At this juncture, two observations are appropriate.  First, at least two circuits have recognized the dilemma a petitioner faces where the new evidence of actual innocence is raised in the context of a claim that counsel was ineffective for presenting the evidence.  *See Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). In *Gomez*, the new evidence included the defendant's own testimony, which was not presented at trial, allegedly due to his trial counsel's ineffectiveness in failing to advise or call him to testify at trial.  *See id.* at 677, 679–80.  The court considered the evidence as new but concluded that it was "insufficient to warrant applying the 'extremely rare' actual innocence exception."  *Id.* at 680; *see also Reeves v. Fayette SCI*, 897 F.3d 154, 164 (3d Cir. 2018), *as amended* (July 25, 2018) ("[W]e now hold that when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the *Schlup* actual innocence gateway.").

As a second observation, here is how the preceding holdings apply to the current petition.  During the Rule 32 proceedings, the Alabama Court of Criminal Appeals (ACCA) rejected Petitioner's ineffective-assistance claim that his trial attorney prevented him from testifying at trial:

> At no time during the colloquy with the circuit court at his trial and at no time during the evidentiary hearing on his Rule 32 petition did Hughes testify that [his trial counsel] actually deprived him of his ability to choose whether he was going to testify in his own behalf at

trial. Although the evidence at the Rule 32 hearing showed that [his trial counsel], knowing that he wanted to testify, advised Hughes that his testifying at trial would not be a good idea, told him "no," and waived her finger at him, Hughes later informed the circuit court that it was his own decision not to testify at trial. So, contrary to Hughes's allegation in his Rule 32 petition and his argument on appeal, [his trial counsel] did not "prevent" him from testifying in his own behalf. Accordingly, Hughes failed to prove the first prong of the Strickland analysis—*i.e.*, that [his trial counsel] acted deficiently when she advised Hughes that he should not testify at trial. Thus, the circuit court did not err when it denied Hughes's claim of ineffective assistance of counsel.

(Doc. # 18-23 at 24–25; *see also* Doc. # 18-7 at 16–17 (detailing the trial court's questioning of Petitioner concerning his decision, after consultation with his counsel, "not to give testimony in [his] case").)

If Petitioner were able to pass through the actual-innocence gateway, which he cannot, this federal habeas court would review the ACCA's decision on the underlying ineffective-assistance claim using the deferential standard established by the AEDPA. *See* 28 U.S.C. § 2254(d)(1)–(2); *Williams v. Taylor*, 529 U.S. 362, 404–05, 412–13 (2000); *see also McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1261 n.12 (11th Cir. 2009) (observing that in the context of AEDPA review, the court should "look through" a summary decision to the "last reasoned decision" on the issue). However, for purposes of a gateway actual-innocence assertion, the "AEDPA's deferential standard of review for claims decided on the merits by a state court, found in § 2254(d), has no application." *Fontenot v. Crow*, 4 F.4th 982, 1034 (10th Cir. 2021). "[T]he presumption of correctness applied to state court

15

factfinding under [28 U.S.C.] § 2254(e)(1) does still apply." *Id.* Thus, "when a state court has made a factual determination bearing on the resolution of a *Schlup* [actual-innocence-gateway] issue, the petitioner bears the burden of rebutting this presumption by 'clear and convincing evidence.'" *Id.* at 1034–35 (citation omitted).

Having reviewed the state trial record, this court finds that Petitioner has not alleged facts that clearly and convincingly demonstrate that the ACCA's factual determination, specifically that Petitioner's counsel did not prevent him from testifying, should not be presumed correct. Therefore, Petitioner cannot use the actual-innocence gateway to claim his testimony was unavailable at trial based on his counsel's refusal to let him testify. Whether Petitioner's unavailability argument is more factually nuanced, such as that his testimony was unavailable because his decision not to testify was based on incompetent legal advice from his trial counsel (rather than trial counsel's refusal to put him on the stand), need not be addressed because, as explained below, the new evidence would fail in any event. It is merely noted here that the evidence is not necessarily new under the first approach.

### iii.    Assumption that the Evidence Qualifies as New

As in *Stimpson*, this court need not decide between the competing approaches as to what sort of evidence qualifies as new. *See Stimpson v. Warden*, 2025 WL 484049, at *4 (11th Cir. Feb. 13, 2025). For purposes of analyzing the gateway claim of actual innocence, this court will assume that if Petitioner had testified at his

trial, he would have claimed that the sexual intercourse underlying the charge for first-degree rape was consensual. However, even with this assumed testimony, Petitioner has not established actual innocence to avoid the AEDPA's one-year limitation bar. *See id.*

> **b.** **Whether, in Light of the (Assumed) New Evidence, No Reasonable Juror Would Have Found Petitioner Guilty Beyond a Reasonable Doubt**

In evaluating the demanding standard for a gateway claim of actual innocence, the federal habeas court must consider "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" and determine whether the petitioner has met the standard. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). This assessment requires "a holistic judgment about 'all the evidence' . . . and its likely effect on reasonable jurors applying the reasonable-doubt standard." *Id.* at 539 (quoting *Schlup*, 513 U.S. at 328). "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. "Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new

17

evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."[7]  *Id.*

In light of the foregoing legal principles, for purposes of analyzing the gateway claim of actual innocence, the court must make a determination, based on all the evidence presented at the state court trial, about what reasonable, properly instructed jurors would conclude if they had heard Petitioner's testimony claiming that the victim consented to sexual intercourse on the day in question.  That probabilistic determination is that reasonable jurors—weighing what was available at trial and what has since been presented (*i.e.*, Petitioner's trial testimony)—would have found Petitioner guilty beyond a reasonable doubt.

The trial evidence of Petitioner's guilt was so overwhelming that the absence of his testimony would not have impacted a reasonable juror's decision to convict. The State introduced graphic, threatening, inculpatory text messages Petitioner sent to the victim during the two weeks prior to his forcibly breaking into her home through a locked back door and having what he would say was consensual sexual intercourse with the victim.  The content of those texts are detailed in the ACCA's decision affirming the convictions and sentences on direct appeal and will not be

---

[7] As the *Schlup* Court explained, "[t]he word 'reasonable' in th[e above] formulation is not without meaning.  It must be presumed that a reasonable juror would consider fairly all of the evidence presented.  It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt."  513 U.S. at 329.

repeated here.  (Doc. # 18-12.)  To summarize, Petitioner told the victim in crude language that he was going to have sex with her; that she did not "have a choice"; that if she said "[N]o," then he would "take it," so she should "just give [him] that p----"; that he would "kick that f------ door in if [she] d[idn't] open it"; and that he would not leave "without that f------ p----." (Doc. # 18-12 at 3–4; Doc. # 18-1 at 189 (record of text messages from Petitioner to the victim showing that twice on September 9, 2016, he texted with an explicative that he would kick down her door); Doc. # 18-1 at 199–200).)  The day prior to his being charged with first-degree rape, Petitioner texted the victim:  "I will rape you until you can't walk if you tell me no," referring to her refusal to send him photos of her vagina, and that he would "f------ teach [her] a lesson!!!!"  (Doc. # 18-12 at 4; *see also* Doc. # 18-6 at 94–104; Doc. # 18-1 at 191, 193 (all caps omitted).)

Additionally, the State presented evidence of Petitioner's forced entry into the victim's home through a locked back door.  The forced entry took place two days after Petitioner had threatened in text messages to the victim to kick in her door. (Doc. # 18-5 at 196–200; Doc. # 18-6 at 1–4, 129–31.)  In his current petition, Petitioner has not claimed that he would have testified that he did not forcibly enter the locked back door of the victim's home on the day of the charged rape.

At trial, there also was the victim's testimony detailing violent and nonconsensual sexual intercourse, a medical examination noting a very thin skin tear

19

of the victim's perineum, and DNA testing indicating that Petitioner's DNA was the major component of the semen taken from the victim's vaginal swabs. (Doc. # 18-12 at 4–6; Doc. # 18-6 at 35–38, 53, 109–120.)   This evidence would have contradicted trial testimony by Petitioner about consensual sexual intercourse on the day in question. It was so compelling that, had Petitioner testified that the sexual intercourse on the day in question was consensual, he risked an intense and damaging cross-examination that would have undermined his defense strategy.  This compelling evidence would have made it exceedingly difficult for Petitioner's position to withstand the scrutiny of cross-examination.

Additionally, the jury heard evidence that Petitioner and the victim had an ongoing, consensual sexual relationship for close to two years and that they had consensual sexual intercourse as recent as nineteen days prior to the rape for which he was convicted. (Doc. # 18-6 at 78–83, 90, 126.)  Their prior intimate relationship and details of their consensual sexual activities were elicited through cross-examination and Petitioner's and the victim's text messages.   Petitioner's trial counsel rigorously questioned the victim about her consensual sexual relationship with Petitioner, and the victim confirmed that text messages exchanged during the period of that consensual sexual relationship included similar language and demands from Petitioner as set out above.  (*See, e.g.*, Doc. # 18-6 at 171–73, 184–87.)  Trial counsel also challenged the victim's testimony and credibility through cross-

examination.   (Doc. # 18-6 at 131–200; Doc. # 18-7 at 1–3; Doc. # 18-7 at 13–15.) The jury had before it evidence regarding Petitioner and the victim's past, consensual sexual relationship but found that there was no consent on the day in question.

Finally, Petitioner's protestation of innocence through his own testimony lacks the reliability of the kinds of evidence federal habeas courts have relied on to permit gateway claims of actual innocence.  In two cases involving sexual assaults, federal habeas courts identified convincing new evidence.  In *Williams v. Brown*, 208 F. Supp. 3d 713 (E.D. Va. 2016), that evidence included DNA findings that only a different suspect's DNA was present under the victim's fingernails and on a vaginal swab.  *Id.* at 730.   Additionally, an expert's reconstruction theory convincingly demonstrated that another suspect acted alone, without the petitioner being present.  *See id.* at 730–32.  In *Richter v. Bartee*, 973 F. Supp. 1118 (D. Neb. 1997), testimony from a forensic pathologist indicated that the victim's wounds were self-inflicted, and a psychiatrist testified about the victim's mental health disorder, which rendered her incapable of distinguishing reality.  *Id.* at 1127.  There also was evidence of a past false rape report by the victim.  *See id.* at 1122–23, 1126–29.

While it is recognized that "comparing one case with another requires caution," *Kuenzel v. Comm'r, Ala. Dep't of Corr.*, 690 F.3d 1311, 1318 n.3 (11th Cir. 2012), Petitioner has not cited any case—binding or non-binding—where

similar new evidence, when considered alongside the trial record, demonstrated actual innocence to overcome § 2244(d)(1)(A)'s one-year period of limitation or other procedural bar. The Eleventh Circuit appears more frequently to have found that petitioners failed to satisfy the actual-innocence-gateway standard. For example, in *Kuenzel*, the petitioner, convicted of capital murder, presented "several pieces of 'new evidence.'" *Id.* at 1316. He presented evidence suggesting the shotgun involved might have been a 16-gauge instead of a 12-gauge. Additionally, new evidence revealed that both the co-defendant (who pleaded guilty to a lesser charge and testified against the petitioner) and the victim exhibited signs of an altercation. Other new evidence indicated that the co-defendant initially told police another man was involved, not the petitioner. Furthermore, there was new evidence that a witness's grand jury testimony was less certain at trial about the petitioner's whereabouts during a critical time before the murder. *See id.* at 1315–18. The Eleventh Circuit held, that, "[w]hile the 'new evidence' Petitioner . . . offered might have strengthened Petitioner's defense if presented at trial, Petitioner ha[d] not offered sufficient 'new evidence' of the powerful kind that would individually or collectively 'show that it is *more likely than not that no reasonable juror* would have convicted him in the light of the new evidence.'" *Id.* at 1318 (quoting *Schlup*, 513 U.S. at 327); *see also Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1017 (11th Cir. 2012) (holding alternatively that even if the specific claim of actual

innocence were cognizable, the claim would fail because the allegedly new evidence was "largely cumulative of what the jury heard, and [the petitioner] ha[d] not made a sufficient showing that it is more likely than not that no reasonable juror would have convicted him of second-degree murder.").

Considering the assumed new evidence of Petitioner's proffered trial testimony that the sexual intercourse on that day was consensual and was not rape, in conjunction with all the evidence actually presented at the trial, this federal habeas court makes the "probabilistic determination" that "reasonable, properly instructed jurors" easily would have disbelieved Petitioner's testimony and still found Petitioner guilty of first-degree rape. *Schlup*, 513 U.S. at 329. Petitioner has not "show[n] that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.[8] The actual-innocence gateway cannot open because Petitioner's proffered testimony would not have amounted to evidence of innocence "so strong" that a court could not have confidence in the guilty verdict on the first-degree rape charge. *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013).

---

[8] The *Kuenzel* court applied the *Schlup* standard inversely by concluding that, "[b]ecause some reasonable jurors—weighing what was available at trial and what has since been presented—would still find Petitioner guilty, Petitioner has not met the '*Schlup* gateway' standard." 690 F.3d at 1318. If this court were to follow this formulation, it similarly would find that "some reasonable jurors—weighing what was available at trial *and* what has since been presented—would still find Petitioner guilty." *Id.*

## IV. CONCLUSION

Petitioner did not file this 28 U.S.C. § 2254 petition for a writ of habeas corpus within the AEDPA's one-year limitation period, *see* 28 U.S.C. § 2244(d)(1).  Rather, he seeks to obtain review of the merits of the time-barred claims by invoking equitable tolling and the actual-innocence gateway.  However, he has not alleged facts to justify application of either.  Therefore, the § 2254 petition is time-barred and must be dismissed with prejudice.

A prisoner seeking a writ of habeas corpus does not have an automatic right to appeal a district court's denial of the petition.  *See* 28 U.S.C. § 2253(c)(1).  Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Petitioner has not shown, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* § 2253(c).  Therefore, Petitioner will be denied a certificate of appealability.

24

Accordingly, it is ORDERED that Petitioner's 28 U.S.C. § 2254 petition is DISMISSED with prejudice. It is further ORDERED that Petitioner is DENIED a certificate of appealability.

Final judgment will be entered separately.

DONE this 4th day of May, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE